**SO ORDERED.**

**SIGNED this 01 day of December, 2011.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

**IN RE:**

| | |
|---|---|
| **MARCUS TIRRELL MONROE,** | **CHAPTER 13** |
| | **CASE NO. 11-05167-8-RDD** |
| **DEBTOR** | |

### ORDER

Pending before the Court is the Motion for Turnover of Vehicle and Stay of Disposition of Vehicle filed by Marcus Tirrell Monroe (the "Debtor") on November 21, 2011 (the "Motion"), and the Response to Motion for Turnover of Vehicle and Stay of Disposition of Vehicle filed by Finance My Autos, Inc. ("Finance") on November 28, 2011 (the "Response"). The Court conducted a hearing on November 30, 2011, in Wilson, North Carolina to consider the Motion and the Response.

### BACKGROUND

On July 2, 2011, the Debtor filed his second petition for relief under Chapter 13 of the Bankruptcy Code. The Debtor's previous Chapter 13 case was filed on September 22, 2010 and was dismissed on January 26, 2011 for failure to make plan payments. On May 13, 2011, the Debtor entered into a Consumer Credit Contract & Security Agreement with Finance. Finance holds a security interest in the Debtor's 1993 Honda Accord EX with a payoff of $6,379.82 with interest at

5.25%. On August 11, 2011, Finance filed a Motion for Relief from Stay, which was resolved by a consent order entered on November 15, 2011. Under the terms of the consent order, the Debtor was to have his plan payments to the Chapter 13 Trustee paid current through October, 2011 no later than the close of business on October 25, 2011. As of the date of the consent order, the Debtor's plan payments were $1,000.00 per month. Under the original plan, by October 25, 2011, the Debtor should have paid a total of $3,000.00 for the August, September and October, 2011 plan payments. In fact, the Debtor had paid a total of $2,000.00 to the Chapter 13 Trustee by October 25, 2011.

On October 25, 2011, a hearing was conducted to consider the Motion for Relief from Automatic Stay filed by The Bank of New York Mellon. At the hearing, the Court ruled from the bench that the Motion for Relief from the Automatic Stay was granted because the petition for relief filed on July 2, 2011, was filed after the expiration of the ten (10) day upset bid period in the special proceeding to foreclose the note secured by Debtor's residence. The Court further ordered the Debtor to remove his person and personal property from his residence located at 3987 Sterling Pointe, Drive, LLL6, Winterville, North Carolina 28590-9244.

On November 16, 2011, Finance filed a Notice of Lift of Stay Pursuant to Conditional Order, based on the Debtor's failure to comply with the terms of the November 15, 2011 consent order. Finance repossessed the 1993 Honda Accord EX on November 17, 2011.[1] On November 21, 2011, the Debtor filed its Second Amended Chapter 13 Plan which provided for plan payments of $500.00 per month for four (4) months and then $400.00 per month for thirty-two (32) months.

---

[1] The Debtor's Motion states Finance repossessed the vehicle on November 17, 2011. Finance's Response states it repossessed the vehicle on November 16, 2011. At the hearing, the Debtor testified that the vehicle was repossessed in the late night hours of November 16, 2011 or the early morning hours of November 17, 2011. For purposes of this order the Court will refer to the date of repossession as November 17, 2011.

## DISCUSSION

The Debtor moves the Court to enter an order requiring Finance to turn over the Debtor's 1993 Honda Accord EX (the "Vehicle") to the Debtor. The Debtor represents that the Vehicle is his only means of transportation to and from his place of employment and that the Debtor's plan proposes to pay Finance in full plus interest at 5.25%. The Debtor contends the Vehicle was wrongfully repossessed because the repossession was done without prior notice to Debtor or Debtor's counsel. Additionally, the Debtor contends that its Second Amended Chapter 13 Plan provides for a reduced plan payment, and that with these modifications, the plan payments will be current through the end of November 2011. At the hearing, Debtor's counsel, Richard L. Cannon, III ("Mr. Cannon"), represented that it was his understanding that the consent order provided that the Debtor was to have his plan payments to the Chapter 13 Trustee paid current through November, 2011, with the payment being due no later than the end of November. Counsel for Finance read into the record email transmissions from Mr. Cannon documenting that it was Mr. Cannon who proposed the terms and dates to be included within the consent order and that Mr. Cannon should be fully aware of the consent order's requirements, especially the "drop dead" date of October 25, 2011, as that was the date that Mr. Cannon offered in his negotiations by which the Debtor would be current on his plan payments.

Finance responds that the Vehicle was properly and rightfully repossessed on November 17, 2011, pursuant to the terms of the consent order and that the consent order contained no provision requiring that the Debtor's attorney be notified prior to the filing of a Notice of Default. Additionally, Finance alleges bad faith on behalf of the Debtor because the Debtor knew or should

have known when he entered into the Consumer Credit Contract & Security Agreement that he would be filing bankruptcy within fifty (50) days.

Additionally, at the hearing, Finance presented evidence establishing that at the time Mr. Cannon negotiated the terms of the consent order with Finance, which was during the first week in November, 2011, Mr. Cannon was aware that the Debtor's plan payments would be decreasing because the Court had previously granted The Bank of New York Melon's Motion for Relief from the Automatic Stay as to the Debtor's residence. Mr. Cannon, however failed to inform Finance of the necessary plan modifications which if communicated and if filed, would have meant the Debtor was current in his plan payments. Mr. Cannon did not file the Second Amended Plan with the Court until November 21, 2011.

The Debtor is employed with Cummins Business Services in Rocky Mount and needs his Vehicle for transportation to and from his work place. According to Schedule I, the Debtor's total net monthly take home pay is approximately $2,208.49. The Debtor testified at the hearing, that Mr. Cannon never informed him that the consent order required him to have his plan payments to the Chapter 13 Trustee paid current through October, 2011, no later than the close of business on October 25, 2011. It was the Debtor's understanding that the payments were to be made no later than the end of November at a reduced payment amount since his residential mortgage would no longer be included in the plan. He testified that he had available funds to make payments to Finance on the original contract, but understood the Finance payment was to be paid inside the plan and therefore was paid current through November. The Debtor further testified that Mr. Cannon did not adequately explain the terms of the consent order with him and failed to keep him informed regarding the negotiations with Finance. Based on the amended plan, the Debtor was current as of

4

October 25, 2011 and this is what the Debtor believed, in spite of the fact Mr. Cannon had negotiated different terms with William F. Hill ("Mr. Hill"), counsel for Finance. Had Mr. Cannon filed the amendments to the plan shortly after the October 25, 2011 hearing on The Bank of New York Mellon's Motion for Relief from the Automatic Stay and informed Finance that the plan payments would be reduced which would cause the Debtor to be current through Novermber, 2011 on the amended plan requirements, the Vehicle would not have been repossessed. Mr. Cannon, who was still negotiating on November 4, 2011 with Mr. Hill requesting deletion of a turnover provision from the proposed consent order, failed to inform Mr. Hill that the plan would be modified so that now the Debtor was current as of October 25, 2011. Mr. Cannon admitted in Court his agreement to the consent order entered on November 15, 2011 was a mistake. Mr. Cannon further admitted he believed he had negotiated the "drop dead" date as of November 25, 2011 and not October 25, 2011. Mr. Cannon negligently failed to review the terms of the consent order prior to entry, was negligent in its negotiation, and negligent in failing to meet the professional standard of care in the representation and communication with the Debtor.

11 U.S.C. § 105(a) "allows a bankruptcy court to enter sanctions for abuse of judicial process." *In re Sledge*, No. 03-02654-8-RDD at 11 (Bankr. E.D.N.C. October 11, 2006) (citations omitted). In addition to § 105(a) "[i]t is well-recognized . . . that courts have the inherent authority to impose sanctions upon counsel who is found to have acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Id.* (quoting *In re Heck's Properties, Inc.*, 151 B.R. 739, 765 (S.D. W. Va. 1992)). The North Carolina State Bar Rules of Professional Conduct require attorneys to render competent representation, which includes thoroughness and preparation. Rule 1.1. As in *In re Sledge*, here, the Court "finds that when a person hires an attorney, he or she is entitled to a certain

level of professional services and those services are to be rendered in a competent manner." *In re Sledge*, No. 03-02654-8-RDD at 9. An attorney "should regularly communicate with his clients to insure that the clients understand the impact and scope of their case and the consequences of certain actions that may be taken in a case. There is a professional standard of care that must be met by the reasonably prudent attorney." *Id.*

The Court finds that Mr. Cannon failed to properly communicate with his client regarding the requirements of the consent order, failed to competently negotiate the consent order, negligently handled negotiations with Mr. Hill, and was negligent in failing to timely modify and file amendments to the plan. Mr. Cannon drafted the language for inclusion into the consent order and then signed the consent order on behalf of his client. While negotiating the consent order, Mr. Cannon was aware that the Debtor's plan would need to be modified to account for the Debtor's residence no longer being included in the Chapter 13 plan. However, Mr. Cannon failed to competently handle these matters to the detriment of his client.

Therefore, because of Mr. Cannon's failure to maintain the professional standard of care of a reasonably prudent attorney in this case and his failure to adhere to the standards of conduct as set forth in the Rules of Professional Responsibility, Mr. Cannon is ordered to pay as a **SANCTION,** the sum of $1,125.00, representing the repossession charge of $250.00 incurred by Finance and Mr. Hill's attorneys' fees of $875.00 for the defense of this matter, to the office of William F. Hill on or before Friday, December 2, 2011 at 12 noon. Further, Mr. Cannon is ordered to pay as a **SANCTION** the sum of $500.00 to the Chapter 13 Trustee on or before Friday, December 2, 2011 at 12 noon. Upon receipt of the $500.00, the Chapter 13 Trustee is directed to pay these funds to Finance to be applied towards its claim.

The Court finds that had the plan been timely amended to reduce the plan payment, and had such information been communicated by Mr. Cannon to Mr. Hill, the Debtor would have been current as of October 25, 2011. But for Mr. Cannon's negligence, the October 25, 2011 "drop dead" provision in the consent order of November 15, 2011, would not have been triggered. Therefore, the Motion for Turnover is **GRANTED.** Finance is directed to turnover the Vehicle to the Debtor upon the Debtor complying with the following conditions: (1) the Debtor shall remit to Finance proof of insurance on the Vehicle with Finance being listed as the loss payee; and (2) for the life of the plan, the Debtor is to make the regular monthly payments to the Chapter 13 Trustee on or before the 15th day of each month. The Trustee is instructed to not grant any waivers during the term of the plan and if the payments are not received within fifteen (15) days of the due date, the automatic stay is and shall be terminated as to Finance and the Vehicle shall and is to be delivered and turned over to Finance immediately.

Further, upon payment of the **SANCTIONS** and upon the Debtor complying with the above conditions, the Chapter 13 Trustee is ordered to disburse a preconfirmation adequate protection payment of $1,500.00 to Finance from the sums presently held by the Chapter 13 Trustee.

**SO ORDERED**.

**END OF DOCUMENT**